```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

Lester Griffin                )
                              )
         Plaintiff,           )
                              )
                              )
    v.                        )   No. 14 C 2906
                              )
Wexford Health Sources, Inc., )
et al.                        )
                              )
         Defendants.          )
                              )

## MEMORANDUM OPINION AND ORDER

The First Amended Complaint in this case (to which I refer for ease of reference simply as the "complaint") alleges that various individuals affiliated with or working at Stateville Correctional Center, where plaintiff is an inmate, violated plaintiff's Eighth Amendment rights through their deliberate indifference to plaintiff's serious medical needs. Specifically, plaintiff alleges that over the course of more than five years, he complained to numerous individuals about gastrointestinal symptoms including stomach pain, bloating, constipation, rectal bleeding, abdominal pain and cramping, and bloody stools. He claims that these symptoms are consistent with serious and potentially life threatening medical conditions such as colon cancer, peptic ulcer and intestinal obstruction, and that it

would be obvious to anyone in the medical field that these symptoms require medical attention and appropriate treatment. Nevertheless, despite plaintiff's many complaints about his ongoing symptoms and his failure to improve with the treatment he has received, defendants have refused to pursue additional, reasonable diagnostic tests or treatments. His complaint seeks injunctive relief and damages pursuant to § 1983.

All defendants who have been served in the case have moved to dismiss the complaint.[1] I resolve the motions as follows.

I.

Plaintiff alleges that he began complaining to defendants about his intestinal symptoms in January of 2009. In total, the complaint identifies nine occasions over a five-and-a-half year period in which plaintiff complained about various gastrointestinal symptoms to one or more of the named defendants, and it identifies eighteen additional instances in which plaintiff complained to others, i.e., to individuals not named as defendants, or identified only as "unnamed Medical Doctor," "unnamed Registered Nurse," or "unnamed Physician Assistant" about these symptoms and the fact that they were "ongoing." Plaintiff alleges that in response to his complaints,

---

[1] The complaint names Parthasarthi Ghosh, C. Harris, and A. Bartlett as defendants, but the docket does not reflect that any summons was ever issued to them. Any claims plaintiff asserts against these defendants are thus dismissed for want of prosecution.

defendants ordered abdominal x-rays and prescribed laxatives and medications for irritable bowel syndrome, but that these measures failed to identify the cause or alleviate the symptoms of his condition. He claims that other reasonable diagnostic tests and treatment options are available and should have been used to diagnose and treat his condition, but that defendants have refused either to order such tests or to refer plaintiff to a gastroenterologist or other specialist.

In one motion to dismiss, defendants Dr. Obaisi, Dr. Carter, Dr. Zhang, Dr. Bautista, Dr. Schaefer, and Dr. Davis, as well as Ms. Williams, Ms. Kits, and Wexford Health Sources, Inc. (collectively, the "Wexford defendants"), argue that dismissal is appropriate under Rule 12(b)(6) because plaintiff's allegations do not state an adequate basis for inferring that any of them was personally involved in the claimed constitutional deprivation. These defendants further argue that plaintiff's claims against Dr. Schaefer must be dismissed as untimely, and that his claims against Wexford Health Sources, Inc., must be dismissed because the complaint does not allege that the corporation supports a policy that sanctions constitutionally infirm prison conditions.

In a separate motion, defendants Lemke, Magana, T. Williams, Hardy, Tanner, Sheehy, and Barnes (collectively, the "IDOC defendants") urge me to dismiss the complaint under Rule

3

12(b)(6) because it does not allege the personal involvement of any defendant and because it is untimely with respect to claims against Sheehy and Hardy.

II.

On a motion to dismiss, I take all allegations in the complaint as true and draw all reasonable inference in plaintiff's favor. *See Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). Section 1983 establishes a cause of action for constitutional violations committed by any "person" acting under color of law. 42 U.S.C. § 1983. Courts have consistently interpreted this language to mean that "a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). *See also Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) ("public employees are responsible for their own misdeeds but not for anyone else's").

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Prison officials may be liable for an Eighth Amendment violation

4

if they are "deliberately indifferent to prisoners' serious medical needs." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). As a general matter, however, prison officials are "entitled to relegate to the prison's medical staff the provision of good medical care," *Burks* 555 F.3d at 595, and thus may be held liable under § 1983 only if they have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Arnett*, 658 F.3d at 755. The relevant inquiry turns on the prison official's subjective state of mind. *Petties v. Carter*, ---F.3d---, 2016 WL 4631679, at *3 (7th Cir. 2016) (en banc).

For a prison warden to be held liable for the conduct of his or her subordinates, the warden "must know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)) (alteration in *Grindle*). Individual liability under § 1983 thus cannot be based on a theory of *respondeat superior*. *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Nevertheless, a prison warden may be sued in his or her official capacity in cases seeking injunctive relief, since the warden "would be responsible for ensuring that any injunctive relief is

5

carried out." *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

"Prison physicians will be liable under the Eighth Amendment if they intentionally disregard a known, objectively serious medical condition that poses an excessive risk to an inmate's health." *Gonzalez* 663 F.3d at 313. Neither negligence, i.e., medical malpractice, nor objective recklessness, i.e., "failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known" is enough. *Petties*, 2016 WL 4631679, at *3 (original emphasis). Instead, plaintiff must allege, and ultimately prove, that the defendant "*actually* knew of and disregarded a substantial risk of harm." *Id*. (original emphasis).

Turning first to the IDOC defendants' motion, I conclude that with the exception of defendant Lemke, the allegations against these defendants do not raise a plausible inference that any of them personally exhibited "deliberate indifference" to plaintiff's serious medical needs. Plaintiff does not attribute any conduct at all to Warden Williams or to former wardens Magana or Hardy, and although he alleges that he complained to defendant Sheehy (a "CMT") in January of 2009 and August of 2010, and that he complained to defendant Barnes (whose position is not identified) in September of 2011 and August of 2013 about stomach pains, constipation, bloody stools, and abdominal pain,

the complaint does not suggest that he told these defendants that his symptoms were ongoing, that he had not received treatment, or that any treatment he had received had been ineffective, nor does the complaint indicate what action, if any, these defendants took in response to plaintiff's complaints. For all that the complaint reveals, plaintiff's complaints to Sheehy and Barnes may have prompted the x-rays and laxatives plaintiff received, and nothing in his allegations suggests that either of these individuals knew that these measures were ineffective.[2] For these reasons, plaintiff's allegations against these individuals do not raise a reasonable inference that actually knew of, and disregarded, a substantial risk of harm, i.e., they were deliberately indifferent to his serious medical needs.

The same is not true, however, of plaintiff's allegations against defendant Lemke. The complaint states that on September 5, 2013, plaintiff "spoke to Warden Lemke about failure to treat ongoing stomach pains." By that time, plaintiff had been

---

[2] This is not to suggest, of course, that the fact that plaintiff received *some* treatment in response to his complaints, however inefficacious, insulates defendants from liability. *See Petties*, 2016 WL 4631679, at *2 n. 1 (rejecting the view that "*any* response by a physician, so long as it is not harmful, satisfies the Eighth Amendment") (original emphasis)). It is only to say that without clearer allegations about which individuals knew that plaintiff wasn't being treated, or knew that the treatments he received were ineffective, there is no basis from which to draw an inference of deliberate indifference.

complaining to various medical staff and prison officials about his gastrointestinal symptoms for nearly five years. Although the complaint does not state specifically what plaintiff told Lemke in September of 2013, it suggests that Lemke knew, at a minimum, that plaintiff's symptoms were ongoing, and that any treatment plaintiff may have received up to that point had not been effective.[3] Contrary to defendants' argument, plaintiff's claim against Lemke is not based on his "failure to take corrective action" to remedy a violation committed by a subordinate. *Cf. Soderbeck v. Burnett County, Wis.*, 752 F.2d 285, 293 (7th Cir. 1985) ("[f]ailure to take corrective action cannot in and of itself violate section 1983. Otherwise the action of an inferior officer would automatically be attributed up the line to his highest superior."). Rather, plaintiff alleges that he told Lemke personally that his ongoing medical

---

[3] The allegation that plaintiff spoke to Lemke "about failure to treat ongoing stomach pains" is ambiguous, as it could mean either that plaintiff told Lemke that he had received no treatment up to that date (indeed, the complaint does not indicate at what point in his ongoing complaints he received x-rays and laxatives), or it could mean that he told Lemke that the treatments he received had not alleviated his symptoms, and/or that potentially effective additional treatments were not pursued. In all cases, however, this allegation reasonably suggests that Lemke had sufficient information to raise a reasonable inference that his failure to act amounted to deliberate indifference to plaintiff's medical needs. *See Petties v. Carter*, ---F.3d---, 2016 WL 4631679, at *4-*5 (7th Cir. 2016) (en banc) (Eighth Amendment violation can be premised either on prison official's persistence in "a course of treatment known to be ineffective" or on "inexplicable delay in treatment which serves no penological interest").

8

needs remained unmet, yet despite this knowledge, Lemke failed to take appropriate action. Although his allegations are sparse, I conclude that plaintiff crosses the threshold of raising a plausible inference that Lemke actually knew about, yet turned a blind eye to, plaintiff's serious medical needs. That is sufficient. *See Petties*, 2016 WL 4631679, at *3; *Grindle*, 599 F.3d at 588.

In addition, plaintiff argues correctly that his claim for injunctive relief may proceed against Stateville's current warden in his official capacity. As noted above, the warden is ultimately responsible for ensuring that any injunctive relief is carried out, and the fact that the complaint does not name Stateville's current warden, Randy Pfister, is of no consequence, as Pfister may be substituted for defendant Tarry Williams in his official capacity for this purpose. *See Gonzalez*, 663 F.3d at 315.

Turning to the Wexford defendants' motion, I agree that Wexford Health Sources, Inc., may be liable for a constitutional violation only if the corporation supports "a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners," *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (quoting *Estate of Novack ex rel. v. County. of Wood*, 226 F.3d 525, 530 (7th Cir. 2000)), and that the complaint lacks any

allegations to this effect. Indeed, "[i]t has long been settled law that, as with § 1983 cases against state actors, there is no respondeat superior liability for § 1983 actions against private corporations." *Delgado v. Ghosh*, No. 11-CV-05418, 2016 WL 316845, at *5 (N.D. Ill. Jan. 27, 2016) (citing *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). While the Seventh Circuit has expressed skepticism about the wisdom of this rule, it has nevertheless squarely confirmed it. *See Shields v. Illinois Department of Corrections*, 746 F.3d 782, 789, 790-93 (7th Cir. 2014). Accordingly, plaintiff's allegations against Wexford Health Sources, Inc., are insufficient as a matter of law.[4]

As for the individual Wexford defendants, I agree that the complaint lumps the various individuals together and fails to state a basis for the personal liability of any one of them. Indeed, plaintiff makes no substantive allegations at all against defendants Obaisi, Carter, Zhang or Bautista, but merely identifies these defendants as current or former medical directors at Stateville. And while the complaint asserts that

---

[4] Plaintiff does not dispute that his complaint lacks allegations that Wexford Health Sources, Inc., has a policy of sanctioning unconstitutional prison conditions, but he argues that he "can show" the existence of such a policy, pointing to deposition testimony he provided in another case. Setting aside whether the cited testimony amounts to evidence of any Wexford policy, it is plainly outside the scope of what I may appropriately consider at this juncture.

plaintiff complained about his gastrointestinal symptoms to defendants Schaefer (once, in 2011), Davis (once, in 2013), Kits (once, in 2014), and L. Williams (once, in 2013) and others, it sets forth no substantive basis for inferring that these individuals exhibited deliberate indifference to his medical needs.

Because the foregoing reasons are sufficient to dismiss plaintiff's damages claims against each of the Wexford defendants, and against each of the individual IDOC defendants except for Lemke, I need not reach the question of whether plaintiff's claims against specific individuals are untimely. In the interest of completeness, however, and in the event plaintiff believes he can amend his complaint to cure the defects noted above consistently with Rule 11, I caution plaintiff to bear in mind § 1983's personal involvement requirement when evaluating which defendants can reasonably be deemed to have violated plaintiff's constitutional rights within the applicable two-year statute of limitations.[5]

---

[5] "[I]n § 1983 actions, federal courts apply the statute of limitations governing personal injury actions in the state where the injury took place." *Serino v. Hensley*, 735 F.3d 588, 590 (7th Cir. 2013). In Illinois, the statute of limitations period for Section 1983 claims is two years. *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) (citing 735 ILCS 5/13-202). *See also Brooks v. Ross*, 578 F.3d 674, 579 (7th Cir. 2009) ("[t]he Supreme Court of Illinois has stated that 'where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the

III.

For the foregoing reasons, the Wexford defendants' motion to dismiss is granted. All claims against these defendants are dismissed without prejudice. The IDOC defendants' motion to dismiss is granted in part. All claims against these defendants, except plaintiff's § 1983 claim against Lemke in his individual capacity and his injunctive claim against defendant Pfister in his official capacity, are dismissed without prejudice. Any amended complaint must be filed by October 11, 2016.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**

United States District Judge

Dated: September 9, 2016

---

plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury.'") (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (2003)).